STATE OF CONNECTICUT *v.* ROBERT E. HULL
(13189)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and COVELLO, Js.

Argued January 4—decision released March 21, 1989

*Denise Dishongh,* special public defender, with whom was *Louis S. Avitabile,* special public defender, for the appellant (defendant).

*Geoffrey E. Marion,* deputy assistant state's attorney, with whom, on the brief, were *John T. Redway,* state's attorney, and *Christine Marsching,* legal intern, for the appellee (state).

PETERS, C. J. The principal issue in this appeal is whether the defendant's constitutional rights were violated by the admission of testimony informing the jury

that the defendant, after having been advised of his *Miranda* rights, invoked his right to silence by requesting an attorney. The defendant, Robert E. Hull, was charged with having committed the crime of murder, in violation of General Statutes § 53a-54a (a),[1] in connection with the stabbing death of his wife. A jury found the defendant guilty as charged, and the trial court, after denying his motion for acquittal, sentenced him to a thirty-five year term of imprisonment. The defendant has appealed. We find no reversible error.

The jury could reasonably have found the following facts. In April, 1985, the defendant's wife, the victim, left the defendant because of his drinking problem and moved to Connecticut. In May, 1985, the victim filed for divorce and a restraining order was issued against the defendant. On June 19, 1985, the defendant, after leaving a suicide note with a friend in Vermont, drove to Middletown, Connecticut, to see the victim. At approximately 4 p.m., the defendant telephoned the victim at a neighbor's house. The victim sounded frightened and told the defendant that she wanted to end their marriage. At approximately 4:20 p.m., the defendant drove his pickup truck into the driveway of the house in Middletown where the victim was staying. The two engaged in an argument, first in the driveway and then in the house. The argument ended in a scuffle, during which the defendant repeatedly stabbed the victim. Carrying the bloody knife away with him, the defendant then drove off in his truck. The police, responding to a neighbor's call, found the victim lying on the kitchen floor with eleven stab wounds. She was pronounced dead at 5:25 p.m.

[1] General Statutes 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception . . . ."

The police officers found and stopped the defendant in his truck at 5:40 p.m. on West Street, in Middletown. They observed signs of intoxication and smelled the odor of alcohol as the defendant exited his truck at their request. They arrested him for driving under the influence of drugs or alcohol and took him to the police station. He was later charged with the murder of the victim.

At the trial, the defendant did not deny that he had killed the victim. Rather, he relied upon evidence of his intoxication at the time of the incident in support of his argument that he lacked the specific intent to commit murder. He maintains, therefore, that he could be found guilty only of one of a number of lesser included manslaughter offenses: first degree manslaughter due to extreme emotional disturbance, intent to cause serious physical injury or reckless first degree manslaughter. (The only intentional first degree manslaughter is extreme emotional disturbance.) He was nonetheless found guilty as charged.

In his appeal, the defendant has raised seven overall claims of error challenging a total of thirteen alleged deficiencies in the proceedings at his trial. Except for the final claim of error, which challenges three nonconstitutional evidentiary rulings by the trial court, these claims represent issues not presented to the trial court. We remind counsel that wholesale appellate reconstruction of trial court proceedings does not serve the administration of justice. State v. Pelletier, 209 Conn. 564, 566–67, 552 A.2d 805 (1989); State v. Hinckley, 198 Conn. 77, 86–87, 502 A.2d 388 (1985). Appellate review of newly discovered issues cannot be guaranteed by couching every claim of error in the constitutional language of State v. Evans, 165 Conn. 61, 70, 327 A.2d 576 (1973), or the common law doctrine

of plain error codified in Practice Book § 4185.[2] Belated appellate scrutiny is warranted only for egregious errors that undermine the fairness of a trial and cast doubt on the integrity of judicial proceedings.

We will, therefore, limit our plenary review to only three of the defendant's multiple claims of error. We decline to review any of the issues raised under the first or second claims of error, which challenge the legal sufficiency of the trial court's instructions to the jury. Read as a whole, the charge adequately informed the jury of the questions it had to resolve. We also decline to review the third claim of error, which charges the trial court with a duty, sua sponte, to determine whether expert testimony, offered by the state in rebuttal to similar testimony by a defense witness, complied with the requirements of General Statutes § 54-86i.[3] Finally we decline to review the defendant's sixth claim of error alleging misconduct in the prosecutor's arguments to the jury because the prosecutor's conduct did not manifest an egregious pattern of blatant prejudicial misstatements.

The issues before us therefore devolve into the following three remaining claims of error. Under *State v. Evans,* supra, we must decide the defendant's fourth and fifth claims, which challenge the admissibility of

[2] Practice Book § 4185 provides in relevant part: "The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interest of justice notice plain error not brought to the attention of the trial court."

[3] "[General Statutes] Sec. 54-86i. TESTIMONY OF EXPERT WITNESS RE MENTAL STATE OR CONDITION OF DEFENDANT. No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto, except that such expert witness may state his diagnosis of the mental state or condition of the defendant. The ultimate issue as to whether the defendant was criminally responsible for the crime charged is a matter for the trier of fact alone."

evidence at trial that (1) informed the jury that the defendant had invoked his constitutional right to silence by asking for an attorney, and (2) included the two knives seized from the defendant's truck at the time of his warrantless arrest. Also, because proper objections were taken at trial, we must review the hearsay claims raised in the seventh claim of error. We conclude that none of these alleged deficiencies in the proceedings at trial furnishes any basis for setting aside the defendant's conviction.

I

We consider first whether the trial court erred in permitting three state's witnesses to testify and the prosecutor to comment that the defendant, after his arrest and after he had been advised of his *Miranda*[4] rights, requested the assistance of his attorney. The defendant contends that admission of this evidence violated his due process rights as guaranteed by the fourteenth amendment to the United States constitution. *Doyle* v. *Ohio,* 426 U.S. 610, 617–19, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). This issue, which is reviewable under *State* v. *Evans,* supra, despite the defendant's failure to voice a timely objection at trial; *State* v. *Plourde,* 208 Conn. 455, 462, 545 A.2d 1071 (1988), cert. denied,    U.S.    , 109 S. Ct. 847, 102 L. Ed. 2d 979 (1989); has three parts. First, does a defendant invoke his constitutional right to silence by requesting the assistance of counsel? Second, may the state elicit impeachment testimony about the defendant's invocation of his right to silence in order to rebut a defense

---

[4] The warnings mandated by *Miranda* v. *Arizona,* 384 U.S. 436, 467–73, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), require that, once the police take a person into custody, they must before commencing interrogation advise him that he has the right to remain silent and that anything he says can be used against him. He must also "be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation . . . . " Id., 471.

of intoxication or to describe its investigative efforts? Third, was it harmful, in this case, to admit testimony about the defendant's invocation of his right to silence?

The testimony in question was given by three police officers, Michael Adorno, Joseph Bibisi and Louis Tosto. Each officer referred to the defendant's request to call his attorney while describing the sequence of events at the police station after the defendant's arrest. According to the officers' testimony, the defendant was brought to the police station by Officer Adorno who had placed him under arrest for driving while intoxicated. Upon arrival at headquarters, the defendant was taken to the processing room, where, at approximately 6:53 p.m., Adorno advised him of his *Miranda* rights. The defendant, indicating his understanding, initialed each of the rights listed on a *Miranda* rights form. He submitted to a toximeter test and then to a urine test. Afterwards Adorno remained with the defendant forty-five minutes to one hour longer, during which time the defendant asked to call his attorney and was allowed to do so, but was unable to reach him.

Officer Bibisi first came into contact with the defendant at approximately 8 p.m. in the booking room at the police station and again informed him of his rights. Bibisi noticed what appeared to be blood on the defendant's clothes, asked him to remove them, and gave the defendant a jump suit. The defendant then asked for his attorney. He appeared unable to locate the telephone number in the telephone book so Bibisi called the attorney for him, but again there was no answer. The defendant was then taken to the cell block.

At approximately 8:57 p.m., Officer Tosto was assigned to process the defendant on the murder charge. He and another officer took the defendant from his cell to the booking area, where Tosto informed him that he was being charged with murder, and that a bond

had been set. Tosto also advised the defendant of his *Miranda* rights. The defendant, after having been given his glasses, read the waiver of rights form and initialed each right until he came to the one referring to his right to counsel, at which point he requested that his attorney, Attorney Peters or Attorney Fortuna, be contacted. Tosto called Fortuna's office, obtained Fortuna's home telephone number and then reached Fortuna at home. After a conversation between the defendant and Fortuna, Tosto continued processing the defendant by taking fingernail scrapings, mug shots and fingerprints.

The prosecutor in his summation discussed testimony presented by Officer Bibisi that indicated that the defendant was not very intoxicated. The prosecutor then stated, "[Bibisi] said that when he tossed [the defendant] the telephone book to look up the telephone number to call Attorney Peters, he seemed to be having difficulty. What that may mean, he didn't know where to look in the telephone book. I don't know. But that in and of itself is not a suggestion that he was intoxicated at that particular point."

## A

*Doyle* v. *Ohio,* supra, is our starting point for determining whether the police officers' testimony, and the prosecutor's commentary, violated the defendant's due process rights. In *Doyle,* the United States Supreme Court held that although "*Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. [Therefore,] it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Doyle* v. *Ohio,* supra, 618; *Greer* v. *Miller,* 483 U.S. 756, 762–63, 107 S. Ct. 3102, 97 L. Ed. 2d 618 (1987); *Wainwright*

v. *Greenfield,* 474 U.S. 284, 290 n.5, 106 S. Ct. 634, 88 L. Ed. 2d 623 (1986); see also *State* v. *Plourde,* supra, 467; *State* v. *Shashaty,* 205 Conn. 39, 48, 529 A.2d 1308 (1987), cert. denied, 484 U.S. 1027, 108 S. Ct. 753, 98 L. Ed. 2d 766 (1988). Accordingly, "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." *Doyle* v. *Ohio,* supra, 619.

In this case, it is uncontested that the defendant had in fact received *Miranda* warnings prior to exercising his constitutionally protected right to counsel. *Jenkins* v. *Anderson,* 447 U.S. 231, 239, 100 S. Ct. 2124, 65 L. Ed. 2d 86 (1980); *State* v. *Plourde,* supra, 465. The defendant, therefore, "received the 'implicit assurance' of *Miranda* warnings in this case. Thus, this prerequisite of a *Doyle* violation was met." *Greer* v. *Miller,* supra, 763; *Doyle* v. *Ohio,* supra, 619.

In *Wainwright* v. *Greenfield,* supra, the United States Supreme Court held that a *Doyle* violation occurs not only when the prosecutor comments upon a defendant's silence, but also when he comments upon a defendant's statement invoking his right to remain silent by requesting his attorney. "With respect to post-*Miranda* warnings 'silence,' . . . silence does not mean only muteness; it includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted." Id., 295 n.13. The defendant's request for his attorney was therefore included within constitutionally protected post-*Miranda* "silence" upon which the state may not comment.

## B

The state cannot justify testimony about the defendant's invocation of his right to counsel as rebutting his claim of intoxication and extreme emotional distur-

bance. A closely analogous argument was advanced and rejected in *Wainwright* v. *Greenfield,* supra, where the United States Supreme Court held that, despite a defense of insanity, the prosecutor could not constitutionally comment upon a defendant's post-*Miranda* silence, including his invocation of his right to counsel. As that court stated: "[T]he State's legitimate interest in proving that the defendant's behavior appeared to be rational at the time of his arrest could have been served by carefully framed questions that avoided any mention of the defendant's exercise of his constitutional rights to remain silent and to consult counsel." Id., 295. For constitutional purposes, we can perceive no distinction between a defense of insanity and a defense of lack of intent to commit murder because of extreme emotional disturbance or intoxication. *"Miranda* warnings contain an implied promise, rooted in the Constitution, that 'silence will carry *no* penalty.' " (Emphasis added.) Id.

It is a closer question whether the state can justify the testimony about the defendant's invocation of his right to remain silent as showing " 'the investigative effort made by the police and the sequence of events as they unfolded . . . .' " *State* v. *Casey,* 201 Conn. 174, 183, 513 A.2d 1183 (1986); *State* v. *Moye,* 177 Conn. 487, 496, 418 A.2d 870, vacated, 444 U.S. 893, 100 S. Ct. 199, 62 L. Ed. 2d 129, on remand, 179 Conn. 761, 409 A.2d 149 (1979). Even evidence of such an investigative effort must, however, be narrowly limited in light of *Doyle.* The Supreme Court of the United States has held that there was no *Doyle* violation where "the [trial] court explicitly sustained an objection to the only question that touched upon [the defendant's] postarrest silence." *Greer* v. *Miller,* supra, 764. We also have found such testimony to be constitutionally permissible in certain limited circumstances, such as those in *State* v. *Casey,* supra, or *State* v. *Moye,* supra,

where only one police officer briefly described what had transpired when that defendant was interviewed at the police station. Those exceptional cases do not, however, signal a retreat from the basic *Doyle* proposition that " 'it does not comport with due process to permit the prosecution during the trial to call attention to [the defendant's] silence . . . . ' " *Doyle* v. *Ohio,* supra, 619, quoting *United States* v. *Hale,* 422 U.S. 171, 182–83, 95 S. Ct. 2133, 45 L. Ed. 2d 99 (1975). Such evidence is impermissible if it was offered to impeach the testimony of the defendant in any way. *State* v. *Moye,* supra.

We conclude, therefore, that the constitution does not permit the extensive commentary on the defendant's invocation of his right to silence that occurred in this case, where three witnesses testified to the defendant's invocation of his right to counsel and the prosecutor mentioned that invocation in his closing argument. Especially since the defendant took the stand to testify in his own behalf, it was "fundamentally unfair and a deprivation of due process" to allow the defendant's silence to be admitted as evidence against him at trial. *Doyle* v. *Ohio,* supra, 618; *State* v. *Plourde,* supra, 468.

### C

We next consider whether the constitutional error of admitting testimony concerning the defendant's post-*Miranda* requests for an attorney was harmful. *South Dakota* v. *Neville,* 459 U.S. 553, 103 S. Ct. 916, 74 L. Ed. 2d 748 (1983). "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman* v. *California,* 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967); *State* v. *Pittman,* 209 Conn. 596, 608–609, 553 A.2d

155 (1989); *State* v. *Plourde,* supra, 469; *State* v. *Green,* 207 Conn. 1, 9, 540 A.2d 659 (1988). The test for harmfulness is whether "there is a reasonable possibility that the improperly admitted evidence contributed to the conviction . . . ." *Schneble* v. *Florida,* 405 U.S. 427, 432, 92 S. Ct. 1056, 31 L. Ed. 2d 340 (1972); *State* v. *Hoeplinger,* 206 Conn. 278, 294, 537 A.2d 1010 (1988); *State* v. *Shifflett,* 199 Conn. 718, 751–52, 508 A.2d 748 (1986). " 'The harmlessness of an error depends upon its impact on the trier and the result, not upon whether the particular evidence involved was legally essential to support the finding.' " *State* v. *Hoeplinger,* supra, 295; *State* v. *Bruno,* 197 Conn. 326, 336, 497 A.2d 758 (1985), cert. denied, 475 U.S. 1119, 106 S. Ct. 1635, 90 L. Ed. 2d 181 (1986) (*Shea, J.,* dissenting); *State* v. *Moscone,* 171 Conn. 500, 508–509, 370 A.2d 1030 (1976) (*Miranda* violation not harmless despite abundance of properly admitted evidence tending to prove guilt).

"A *Doyle* violation may, in a particular case, be so insignificant that it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict without the impermissible question or comment upon a defendant's silence following a *Miranda* warning. Under such circumstances, the state's use of a defendant's postarrest silence does not constitute reversible error." *State* v. *Silano,* 204 Conn. 769, 781, 529 A.2d 1283 (1987). " 'The [error] has similarly been [found to be harmless] where a prosecutor does not focus upon or highlight the defendant's silence in his cross-examination and closing remarks and where the prosecutor's comments do not strike at the "jugular" of the defendant's story.' " Id.; *United States* v. *Davis,* 546 F.2d 583, 594 (5th Cir.), cert. denied, 431 U.S. 906, 97 S. Ct. 1701, 52 L. Ed. 2d 391 (1977); *State* v. *Pellegrino,* 194 Conn. 279, 292, 480 A.2d 537 (1984); *State* v. *Zeko,* 177 Conn. 545, 555, 418 A.2d 917 (1979).

Our examination of the record in this case persuades us that neither the prosecutor nor the state's witnesses "focus[ed] upon or highlight[ed]" the defendant's invocation of his right to counsel. This reading of the record finds support in the failure of defense counsel to object to the references or to move for a mistrial which indicates that he did not consider the evidence prejudicial to the defendant. To the contrary, defense counsel in his cross-examination of Bibisi and Tosto himself elicited testimony about the defendant's unsuccessful attempt to locate his attorney's telephone number in the telephone book and his need for the assistance of the officers to find and dial the number for him. In his final argument, defense counsel himself cited the defendant's request to contact his attorney as illustrative of discrepancies in the testimony of Adorno and Bibisi.

In this case, furthermore, while the evidence pertaining to a *Doyle* violation was not "highlight[ed]," the evidence of the defendant's guilt was overwhelming. Even an error of constitutional magnitude is "harmless beyond a reasonable doubt" under such circumstances. *United States* v. *Hasting,* 461 U.S. 499, 511–12, 103 S. Ct. 1974, 76 L. Ed. 2d 96 (1983); *State* v. *Hoeplinger,* supra, 296–97; *State* v. *Leecan,* 198 Conn. 517, 532–33, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986); *State* v. *Morrill,* 197 Conn. 507, 539, 498 A.2d 76 (1985).

The defendant concededly having killed his wife, the only issue at trial was the defendant's state of mind. The state had the burden of proving each essential element of the crime of murder, including the defendant's specific intent to commit the crime. *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Utz,* 201 Conn. 190, 197, 513 A.2d 1191 (1986); *State* v. *DelVecchio* 191 Conn. 412, 419, 464 A.2d 813 (1983). The defendant alleged that, because of his intox-

ication, he lacked the capacity to form a specific intent. General Statutes § 53a-7; *State* v. *Utz,* supra, 208; *State* v. *D'Antuono,* 186 Conn. 414, 423, 441 A.2d 846 (1982). In his argument that the *Doyle* violation was harmful error, the defendant maintains that the evidence that he invoked his right to counsel on three separate occasions so undermined the evidence he presented about his intoxication and extreme emotional distress that a new trial is required. We are unpersuaded. In our view, even without the references to the defendant's invocation of his right to counsel, the jury still had before it overwhelming evidence to support the state's proof of the defendant's mental state beyond a reasonable doubt.

The state presented the following salient evidence. Shortly before the incident, the victim told the defendant that she wanted to end their relationship, thus providing a motive for her murder. The defendant left a suicide note in Vermont and went to Middletown with the intention of seeing the victim. The defendant had in the past engaged in serious violence toward both the victim and his second wife, and had three knives in his possession when apprehended by the police. At the police station, shortly after the incident, the defendant's speech was normal and he did not appear to have any difficulty walking, removing his clothing, or balancing. Several witnesses testified that they had no difficulty understanding what the defendant said shortly before the incident, and that the defendant did not sway when he walked shortly thereafter. Adorno's statement that he had observed signs of the defendant's intoxication was offset in part by his further comment that the defendant was only mildly under the influence.

Viewing the record in its entirety, we conclude that although, as the defendant contends, there was a *Doyle* violation, the state has met its burden of demonstrat-

ing that the *Doyle* error was harmless beyond a reasonable doubt. A new trial is therefore not warranted on this ground.

## II

We consider next whether the trial court erred in failing to suppress two knives seized from the defendant's truck at the time of his warrantless arrest. The defendant claims that the search violated his fourth and fourteenth amendment rights under the United States constitution.[5] Although not raised at trial by a motion to suppress, this claim warrants appellate review because it implicates a violation of a fundamental constitutional right. *State* v. *Evans,* supra, 70.[6]

The facts relating to this claim are as follows. Police officers stopped and arrested the defendant for driving while intoxicated approximately one hour after the murder. After handcuffing the defendant and placing him in a police vehicle, an officer returned to the defendant's truck to get his registration. When the officer opened the glove compartment, two knives fell out. He closed the glove compartment, leaving the knives there. He then radioed police headquarters to tell them to impound the truck. A search warrant was subsequently issued and the knives were seized.

[5] The defendant also claims that the search violated his rights pursuant to the Connecticut constitution. He has, however, " 'proffered no argument that the rights afforded to him by the federal and state constitutions are in any way distinguishable with respect to the substantive issue that he has raised.' " *State* v. *Chung,* 202 Conn. 39, 45 n.7, 519 A.2d 1175 (1987); *State* v. *Toste,* 198 Conn. 573, 576 n.3, 504 A.2d 1036 (1986); *State* v. *Braxton,* 196 Conn. 685, 688 n.2, 495 A.2d 273 (1985). We, therefore, decline to undertake an independent analysis of his claim that the search violated his rights under the Connecticut constitution.

[6] The defendant also contends that one of the knives was not relevant and that, therefore, the knife, a photograph of it and all testimony concerning it should have been excluded. We decline to review this issue because it was not raised at trial and does not implicate a fundamental constitutional right.

At the victim's autopsy, the two knives, along with a third knife seized from the defendant's person, were compared with the victim's stab wounds. The three knives, photographs of the knives and testimony concerning the knives were admitted into evidence without objection at the defendant's trial.

A search that occurs incident to a lawful arrest is one of the recognized exceptions to the constitutional prohibition of warrantless searches. U.S. Const., amend. IV; *New York* v. *Belton,* 453 U.S. 454, 459, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981); *United States* v. *Robinson,* 414 U.S. 218, 235, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973); *State* v. *Badgett,* 200 Conn. 412, 424, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). The fact that a suspect has been arrested and removed from his automobile before a search of the automobile occurs does not render the search unlawful. *New York* v. *Belton,* supra, 462–63; *State* v. *Badgett,* supra, 427; see 3 W. LaFave, Search and Seizure (2d Ed. 1987) § 7.1 (c), p. 15 and n.73. The search may lawfully include closed "containers," which "denotes any object capable of holding another object. It thus includes closed or open glove compartments . . . ." *New York* v. *Belton,* supra, 460–61 n.4; see also *State* v. *Dukes,* 209 Conn. 98, 104, 547 A.2d 10 (1988); 3 W. LaFave, supra, § 7.1 (c), pp. 17–18 and n.83.

The defendant mistakenly relies upon *State* v. *Badgett,* supra, to support his claim that the search of his truck was unrelated to his arrest and hence unconstitutional. Although we recognized in *Badgett* that a lawful arrest ceases to provide justification for the warrantless search of an automobile once the arrestee is taken from the scene of the arrest; id., 427-28; that limitation on *New York* v. *Belton* is inapplicable in this case. The search that took place here falls within the general rule of *New York* v. *Belton* that "a lawful custodial arrest justifies a contemporaneous search of the

entire passenger compartment of an automobile,
whether or not the arrestee actually had control over
the area." *State* v. *Badgett,* supra, 425. The defendant
concedes that he had not been removed from the scene
of his lawful arrest at the time of the search of his truck,
and the search was, therefore, constitutionally valid as
incident to a legal arrest.

The actual seizure of the knives was equally permissible as a matter of federal constitutional law. Adorno
elected not to seize the knives immediately, opting
instead to have headquarters impound the truck. He
then promptly obtained a search warrant on the basis
of his knowledge that probable cause existed to believe
that there was evidence of a crime in the defendant's
truck. The short delay in the seizure that was occasioned by recourse to a search warrant was not unconstitutional.

Even without a warrant, a seizure has been recognized as generally less intrusive than a search. "[T]he
Court has frequently approved warrantless seizures of
property, on the basis of probable cause, for the time
necessary to secure a warrant, [even] where a warrantless search was either held to be or likely would have
been held impermissible. *Chambers* v. *Maroney,* [399
U.S. 42, 51, 90 S. Ct. 1975, 26 L. Ed. 2d 419, reh.
denied, 400 U.S. 856, 91 S. Ct. 23, 27 L. Ed. 2d 94
(1970)]; *United States* v. *Chadwick,* [433 U.S. 1, 13–14
n.8, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977)]; *Arkansas*
v. *Sanders,* 442 U.S. 753, [99 S. Ct. 2586, 61 L. Ed.
2d 235 (1979)]." *Segura* v. *United States,* 468 U.S. 796,
806, 104 S. Ct. 3380, 82 L. Ed. 2d 599 (1984). It is,
therefore, clear that no constitutional violation occurs
where, as in this case, there was probable cause *and*
the warrantless search was permissible.[7] The trial

---

[7] An automobile may also be legally searched without a warrant when
there is probable cause to believe that the automobile contains evidence
pertaining to a crime, under the so-called "automobile exception." *United*

court, therefore, did not err in admitting the knives
into evidence.

## III

We turn finally to the three evidentiary rulings to
which the defendant properly objected at trial, and
whose merits we therefore review at this time. The
defendant contends that the trial court erred in admit-
ting testimony regarding: (1) the contents of a tele-
phone call from the Vermont state police to the
Middletown police; (2) statements of the victim over-
heard by Mazie and Flora Long; and (3) statements of
the victim overheard by Richard Breault. The defend-
ant contends that the trial court erred because the evi-
dence involved in each ruling was hearsay or was
otherwise inadmissible. We conclude that none of the
disputed evidence was hearsay for the purpose for
which it was admitted nor was it otherwise inadmis-
sible.

The underlying issue with respect to the hearsay
claims is whether the challenged testimony was admit-
ted into evidence to prove the truth of the statements
reported therein, or for some other purpose such as
their effect on the person who heard them. The appli-
cable ground rules are clear. "The hearsay rule forbids
evidence of out-of-court assertions to prove the facts
asserted in them. If the statement is not an assertion
or is not offered to prove the facts asserted, it is not

*States* v. *Ross,* 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982); *Carroll*
v. *United States,* 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925) (war-
rantless search of automobile based on probable cause it contained contra-
band not unreasonable within meaning of fourth amendment); *State* v.
*Januszewski,* 182 Conn. 142, 152–54, 438 A.2d 679 (1980), cert. denied,
453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). The state con-
tends that the knives were admissible pursuant to this exception. We need
not, however, consider the applicability of the "automobile exception" in
this case because of our conclusion that the search was constitutionally per-
missible as incident to a lawful arrest.

hearsay." C. McCormick, Evidence (3d Ed. 1984) § 249, p. 732. This exclusion from hearsay includes utterances admitted to show their effect on the hearer. *State* v. *Gonzales,* 186 Conn. 426, 429, 441 A.2d 852 (1982) (testimony of officers offered not for truth of statements made over the police radio "but rather to show the effect of the broadcasts on their hearers" is not barred by hearsay rule); *State* v. *Vennard,* 159 Conn. 385, 392, 270 A.2d 837 (1970), cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed. 2d 625 (1971); see C. McCormick, supra, p. 733; C. Tait & J. LaPlante, Handbook of Connecticut Evidence (2d Ed. 1988) § 11.3.3, p. 324.

## A

The defendant first challenges the admissibility of the first of two telephone calls from the Vermont state police to the Middletown police. He claims that the statements made therein were inadmissible because they "suggested before the fact that the Vermont State Police knew the defendant had a gun and was heading for his wife." Peter Taft, a police officer, testified that at approximately 3:15 p.m. on June 19, 1985, he received a telephone call from the Vermont state police informing him that the defendant had left a suicide note in Vermont and that the police had reason to believe that he might be headed to Middletown to see his estranged wife and might have a gun. Taft was given a description of the defendant's truck and the truck's registration. He gave his supervisor a note to be posted at the police station for the next shift of policemen.

In conjunction with overruling the defendant's objection that the testimony was hearsay, the trial court, after the testimony had been given, instructed the jury about the limited use to which the testimony might be put. The court explained that the statements had been offered not as proof of the truth of the information given to Taft but only to show its effect on Taft's con-

duct.[8] Consequently, the testimony regarding the contents of the telephone calls was not hearsay.

We are equally unpersuaded by the defendant's claim, in reliance on *State* v. *Vennard,* supra, 392–93, that the testimony, even if not hearsay, was too prejudicial to be admissible. In *Vennard,* we held that testimony regarding the contents of the defendant's call to the police reporting that he had struck his mother on the head with a hammer, although not hearsay, should not have been admitted despite a limiting instruction because the jury might consider the call as an admission by the defendant. The facts of the present case are readily distinguishable from those of *Vennard.* The contents of the telephone call in the instant case are far less incriminatory; they can hardly be considered prejudicial in light of the defendant's failure to contest coming to Connecticut and causing the victim's death. We conclude that the jury was not led to any prejudicial conclusion by the admission of Taft's testimony.

Finally, we conclude that the trial court did not abuse its discretion in determining that the evidence was sufficiently relevant to be admissible. *State* v. *Periere,* 186 Conn. 599, 608, 442 A.2d 1345 (1982); *State* v. *Runkles,* 174 Conn. 405, 413, 389 A.2d 730, cert. denied, 439 U.S. 859, 99 S. Ct. 177, 58 L. Ed. 2d 168 (1978). " 'Evidence is admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case. One fact is relevant to another fact whenever,

---

[8] The court gave the following instruction: "Ladies and gentlemen of the jury, I want to give you a cautionary instruction at this time, which may happen during the course of the trial. You've just heard certain testimony given by Officer Taft. I want to point out to you that the Court has allowed this evidence to be given, but you are not—it is not being offered to prove the truth of the information given to Officer Taft by the Vermont State Police Department relative to the information contained in both phone calls, but is merely admitted into evidence to show the effect on the hearer of that information and to give an explanation to the subsequent conduct which they did under the circumstances."

according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issues. . . .' " *State* v. *Periere,* supra, 607–608; *State* v. *Gold,* 180 Conn. 619, 645–46, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980); *State* v. *Villafane,* 171 Conn. 644, 674–75, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977). The trial court might reasonably have concluded that the statements in the telephone call were relevant to establish why the police officers acted as they did. The testimony was, therefore, properly admitted.

## B

The defendant also contends that the trial court erroneously admitted into evidence the hearsay testimony of Mazie and Flora Long about statements of the victim that they had overheard. Mazie and Flora each testifed that the victim had told the defendant that she would not go back to him and that the victim had later said, "Oh, no . . . . Oh, no." Flora also testified that the victim had mentioned another man. The defendant objected to this testimony as hearsay, but it was admitted, without limiting instruction, as probative of the state of mind of the defendant.

Because the testimony concerning the victim's statements to the defendant was proffered not to establish the truth of the facts asserted, but rather to show their effect on the defendant's state of mind, the trial court correctly concluded that the statements were not hearsay. "Out–of–court statements to a person are admissible to show his state of mind where his mental state is relevant." *State* v. *Jones,* 205 Conn. 723, 731, 535

A.2d 808 (1988); see also *State* v. *Brokaw,* 183 Conn. 29, 32, 438 A.2d 815 (1981); *Zenik* v. *O'Brien,* 137 Conn. 592, 598, 79 A.2d 769 (1951); C. McCormick, supra, § 249, p. 588. The defendant's state of mind was relevant to specific intent and to motive; and, therefore, the statements did not constitute hearsay. *Emich Motors Corporation* v. *General Motors Corporation,* 181 F.2d 70 (7th Cir.), modified, 340 U.S. 558, 71 S. Ct. 408, 95 L. Ed. 534 (1950), reh. denied, 341 U.S. 906, 71 S. Ct. 610, 95 L. Ed. 1345 (1951) (customer complaint letters admissible to show motivation for cancellation of franchise); *State* v. *Graham,* 186 Conn. 437, 439, 441 A.2d 857 (1982) (officer allowed to testify that he had been told that defendant carried a gun and would use it because defendant had challenged the officer's motive for searching the defendant's truck); and see *State* v. *Jones,* supra, 731; C. McCormick, supra, § 249, pp. 733–34.

The challenged testimony was also admissible as evidentiary of the victim's state of mind, regardless of the truth of its contents. The victim's mental state was relevant both to show the victim's fear of the defendant; *State* v. *Periere,* supra, 605-607; C. Tait & J. LaPlante, supra, § 11.3.2; and to establish the defendant's motive for committing the crime. *State* v. *Thomas,* 205 Conn. 279, 285–86, 533 A.2d 553 (1987). This alternate reasoning lends further support to the trial court's ruling.

## C

Finally, the defendant claims that Richard Breault's testimony concerning the victim's fourth telephone conversation with the defendant should have been excluded as hearsay. Breault testified that he had heard the victim tell the defendant that she was tired of his drinking and wanted to end their relationship. He also heard her tell the defendant that "he could believe what he

wanted to believe about the rumors about Lloyd and her . . . ." The court instructed the jury that Breault's testimony was not admitted for the truth of the statements made, but "for the purposes of determining the effect, if any, on the hearer of that telephone call [the defendant]." As with the testimony of Mazie and Flora, this evidence was not hearsay, was relevant to the issue of the defendant's motive for killing the victim, and was not so prejudicial as to require its exclusion under *State* v. *Vennard,* supra. This testimony was, therefore, properly admitted.

There is no error.

In this opinion the other justices concurred.