STATE OF CONNECTICUT *v.* THOMAS R. STANGE
(13359)

PETERS, C. J., CALLAHAN, GLASS, HULL and SANTANIELLO, Js.

Argued May 5—decision released August 15, 1989

*Eric A. Malchodi,* certified legal intern, with whom were *Todd D. Fernow, Lawrence P. Rizzo,* certified legal intern, and, on the brief, *Michael R. Sheldon* and *Timothy H. Everett,* for the appellant (defendant).

*Geoffrey Marion,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, *James Thomas,* assistant state's attorney, and *Janine D'Angelo,* former legal intern, for the appellee (state).

SANTANIELLO, J. The defendant, Thomas Stange, was charged with one count of murder in violation of General Statutes § 53a-54a in connection with the shooting death of Roger Gagnon. Following a trial by jury, he was convicted of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1) and sentenced to a term of imprisonment. The defendant claims on appeal that the trial court erred in: (1) admitting under the spontaneous utterance exception to the hearsay rule statements made by the victim to

a police officer identifying the defendant as the person who shot him; (2) commenting beyond permissible bounds on the admission of the victim's spontaneous utterances in its charge to the jury; and (3) refusing to permit the testimony of a police detective regarding statements that the victim had made to a friend. We find no error.

The jury could reasonably have found the following facts. On January 14, 1985, between 1:30 and 1:45 p.m., persons living in the area of East Plymouth Road, Terryville, heard two shots fired in rapid succession. A few minutes after hearing the shots, Tregg Johnson, the defendant's next door neighbor, and Douglas Trzuskowski, Johnson's guest, heard the victim, Roger Gagnon, yelling for help and knocking at the front door of the Johnson home. Looking out a window, Johnson and Trzuskowski saw the victim lying on the ground, holding his bleeding arm and yelling for help. Trzuskowski telephoned the Bristol police, who in turn notified the Plymouth police dispatcher at approximately 1:51 p.m. While waiting for the police to arrive, Johnson and Trzuskowski, watching from inside the house, saw the victim repeatedly fall to the ground, stagger to his feet and attempt to walk.

At approximately 1:56 p.m., police officer James Senetcen arrived at the Johnson home. He found the victim lying on Johnson's front lawn about thirty feet from East Plymouth Road, covered in blood, rocking back and forth in a fetal position, rubbing his abdomen and screaming that he had been shot. While waiting for an ambulance to arrive, Senetcen attempted to calm the victim, whom he believed to be in shock, and questioned him regarding what had happened. The victim told Senetcen that he had been shot by "Tom Stange."

At 2:01 p.m., an ambulance arrived and paramedic James Dubowsky examined the victim. He observed

that the victim had sustained six to eight shotgun pellet wounds in his abdomen, chest and right wrist and was beginning to go into shock. The victim later died from the gunshot wounds.

At approximately 2:25 p.m., the Plymouth police dispatcher received a call from a man identifying himself as Thomas Stange of 27 East Plymouth Road in Terryville. Stange reported that minutes before, while he was outside, someone had run across his yard and threatened him. Later that afternoon, the defendant admitted to the police that he had shot the victim, but he claimed that he had acted in self-defense when frightened by the victim.

I

We consider first the defendant's claim that the trial court erred in admitting under the spontaneous utterance exception to the hearsay rule statements made by the victim to Senetcen. This claim arises out of the following trial court proceedings.

On the second day of trial, outside the jury's presence, the court conducted a hearing on the defendant's motion in limine to determine the admissibility of the victim's statements to Senetcen. In its offer of proof, the state called Senetcen, Dubowsky and Paul Morocco, an emergency room employee at Bristol Hospital, all of whom testified as to the victim's grave condition between the time he was found on Johnson's front lawn and the time he arrived at the hospital.

Senetcen also testified that upon arriving at the scene and determining that the victim was unarmed, he knelt by the victim and questioned him for "one to two minutes." Senetcen told the court that despite the victim's agitated state, he was able to understand quite well the victim's responses from which he learned the victim's name, address and date of birth. When Senetcen asked

the victim who had shot him, he gestured toward the defendant's house and said, "Tom Stange." He also gave Senetcen a description of the defendant. The victim further informed Senetcen that he had arrived at the defendant's house at 1:45 p.m. in an attempt to get money owed to him by the defendant, that he had gone to the defendant's backyard and that the defendant said, "Come and get it" and shot him twice. When Senetcen asked the victim if he thought he was going to die, he replied that he felt "real bad."

At the conclusion of the state's offer of proof, the defendant argued that the victim's statements to Senetcen were hearsay and inadmissible under either the spontaneous utterance or dying declaration exceptions to the hearsay rule. The trial court, however, permitted the state to present Senetcen's testimony regarding the victim's statements to him under the spontaneous utterance exception,[1] stating that "it is clear to the court . . . that the likelihood for reflective thinking was not there under the circumstances." The defendant contends that, on the facts of this case, the trial court's admission of Senetcen's testimony over his objection and exception[2] was manifest error that unfairly and critically undermined his claim of self-defense. We disagree.

In *Perry* v. *Haritos,* 100 Conn. 476, 484, 124 A. 44 (1924), we recognized a spontaneous utterance exception to the hearsay rule for an utterance or declaration that follows some startling occurrence, that makes reference to the occurrence by one having an opportunity to observe it and that is made in such close connection to the occurrence and under such circumstances

---

[1] The trial court determined that because the victim's statements did not necessarily reflect any consciousness of impending death, the statements were not admissible as dying declarations.

[2] The defendant's exception was duly taken and noted at the time of the trial court's ruling and again when the statements were related to the jury.

as to negate the opportunity for deliberation and fabrication.[3] "The ultimate question is whether the utterance was spontaneous and unreflective and made under such circumstances as to indicate absence of opportunity for contrivance and misrepresentation." *Cascella* v. *Jay James Camera Shop, Inc.,* 147 Conn. 337, 342, 160 A.2d 899 (1960). Whether an utterance is spontaneous and made under circumstances that would preclude contrivance and misrepresentation is a preliminary question of fact to be decided by the trial judge. *State* v. *Chesney,* 166 Conn. 630, 634, 353 A.2d 783, cert. denied, 419 U.S. 1004, 95 S. Ct. 324, 42 L. Ed. 2d 280 (1974);[4] *Cascella* v. *Jay James Camera Shop, Inc.,* supra; *Perry* v. *Haritos,* supra, 485. The trial judge exercises broad discretion in deciding this preliminary question, and that decision will not be reversed on appeal absent an unreasonable exercise of discretion. *State* v. *Chesney,* supra; *Perry* v. *Haritos,* supra.

The crux of the defendant's argument is that the victim's statements lacked the requisite spontaneity to be admissible under the doctrine enunciated in *Perry* v. *Haritos,* supra. In support of his argument, the defendant asserts that the victim's statements consisted of a careful and orderly set of responses to a series of ques-

[3] We held in *State* v. *Chesney,* 166 Conn. 630, 634, 353 A.2d 783, cert. denied, 419 U.S. 1004, 95 S. Ct. 324, 42 L. Ed. 2d 280 (1974), that the rule regarding the admission of spontaneous utterances in civil cases is applicable in the trial of criminal cases.

[4] Our decision in *State* v. *Chesney,* 166 Conn. 630, 353 A.2d 783, cert. denied, 419 U.S. 1004, 95 S. Ct. 324, 42 L. Ed. 2d 280 (1974), which affirmed the trial court's preclusion of any inquiry on cross-examination concerning inconsistent statements of a witness made at a grand jury proceeding, was overruled in *Chesney* v. *Robinson,* 403 F. Sup. 306 (D. Conn. 1975), aff'd without opinion, 538 F.2d 308 (2d Cir.), cert. denied, 429 U.S. 867, 97 S. Ct. 177, 50 L. Ed. 2d 147 (1976). While the federal District Court concluded that preclusion of the grand jury testimony deprived the petition of his constitutional right to effective cross-examination, it did not review our holding in *Chesney* on the admission of statements as spontaneous utterances.

tions, some of which were only peripherally related to the shooting, and followed the shooting by some fifteen to thirty minutes.[5] He maintains that, in light of these factors, the statements were not made at a time and under circumstances in which the victim was incapable of cognitive, deliberate and reflective responses as required under *Perry* v. *Haritos, supra.*

While the element of time between the startling occurrence and the statement itself is important, it is not dispositive. Id., 484. The time element is but one factor to be weighed by the trial judge, together with any other material facts in the circumstances surrounding the statement, when deciding the preliminary question of whether a statement was spontaneous. Id.

A majority of the jurisdictions that have addressed the issue of the effect of the time interval between the startling occurrence and the making of the spontaneous utterance have recognized that an acceptable time interval cannot be specified. Each case must be decided on its particular circumstances. See *United States* v. *Golden,* 671 F.2d 369 (10th Cir.), cert. denied, 456 U.S. 919, 102 S. Ct. 1777, 72 L. Ed. 2d 179 (1982) (victim's statements made fifteen minutes after assault and following high speed flight from the scene admissible as excited utterance); *Hilyer* v. *Howat Concrete Co.,* 578 F.2d 422 (D.C. Cir. 1978) (statement by worker made between fifteen and forty-five minutes after fellow worker was run over by a truck admissible as an excited utterance with evidence indicating continued excitement); *People* v. *Francis,* 129 Cal. App. 3d 241, 180 Cal. Rptr. 873 (1982) (victim's statements made in calm manner within twenty minutes of stabbing under circumstances of physical and emotional stress and shock

---

[5] On the basis of the testimony presented, the trial court found that the time span between the shooting and the statements "would at most be thirty minutes, probably more like fifteen minutes."

admissible as spontaneous utterance); *People* v. *Gacho,* 122 Ill. 2d 221, 522 N.E.2d 1146 (1988) (victim's statement naming attacker six and one-half hours after shooting admissible as spontaneous declaration); *People* v. *Brown,* 70 N.Y.2d 513, 517 N.E.2d 515, 522 N.Y.S.2d 837 (1987) (victim's statements to police officer approximately thirty minutes after shooting properly admitted as excited utterance); *Commonwealth* v. *Blackwell,* 343 Pa. Super. 201, 494 A.2d 426 (1985) (victim's statements made within thirty to forty-five minutes after he was robbed were spontaneous reactions to startling event); *State* v. *Black,* 46 Wash. App. 259, 730 P.2d 698 (1987) (victim's statements made within hours of rape while still distraught admissible as excited utterance); see generally annot., 4 A.L.R.3d 149, § 6.

Similarly, other jurisdictions have not barred the admission of statements in evidence as spontaneous utterances solely because they were made in response to a question or series of questions. *United States* v. *Iron Shell,* 633 F.2d 77 (8th Cir. 1980) (police officer's testimony as to nine year old victim's statements admissible as spontaneous utterances although made fifteen minutes after assault and in response to an inquiry); *People* v. *Farmer,* 47 Cal. 3d 888, 765 P.2d 940, 254 Cal. Rptr. 508 (1989) (victim's responses to extensive questioning admissible as spontaneous utterance; preoccupation with intense pain and concern for survival precludes opportunity or incentive to fabricate); *State* v. *James,* 310 N.W.2d 197 (Iowa 1981) (victim's statements in response to questioning by police thirty minutes after attack admissible as excited utterance); *People* v. *Brown,* supra (victim's statements made in response to deliberate questions of police officer thirty minutes after shooting admissible as spontaneous utterance); *State* v. *Robinson,* 44 Wash. App. 611, 722 P.2d 1379 (1986) (victim's responses to questions admissi-

ble as excited utterances); see generally annot., 4 A.L.R.3d 149, § 21.

In the present case, the record indicates that the victim's statements were made approximately fifteen to thirty minutes after a shooting that inflicted serious wounds. During the interval of time between the shooting and the statements, the victim moved some seventy-five yards from the defendant's backyard to Johnson's front door. The victim was observed staggering, falling repeatedly and continuously crying out for help. Senetcen testified as to both the agitated and painful state in which he found the victim and his belief that the victim was in shock. There is nothing in the record to suggest that the victim, at the time that he made the statements, was no longer under the influence of the stress and excitement of being shot.

We are not persuaded that, under these particular circumstances, the trial court's determination that the victim lacked the opportunity to reflect and that his statements to Senetcen were therefore admissible as spontaneous utterances was an abuse of its discretion.

## II

The defendant next claims that the trial court's comments to the jury in its final charge regarding the admission of the victim's spontaneous utterances violated the defendant's right to a fair trial by an impartial jury. Because the defendant did not raise this claim below as required by our rules, Practice Book § 4185, review can be had only if "the record adequately supports a claim that [the] litigant has clearly been deprived of a fundamental constitutional right and a fair trial." *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973). "Belated appellate scrutiny is warranted only for egregious errors that undermine the fairness of a trial and cast doubt on the integrity of judicial proceedings." *State* v. *Hull*, 210 Conn. 481, 485, 556 A.2d 154 (1989).

While the defendant concedes that the trial court has broad discretion to comment on evidence, he claims that the trial court's charge on the admission of the victim's statements as spontaneous utterances amounted to irremediable, partisan judicial commentary that wholly compromised the jury's impartiality in favor of the state's claim that the defendant had not shot the victim in self-defense. The defendant cites our decisions in *State* v. *Smith,* 200 Conn. 544, 512 A.2d 884 (1986), and *State* v. *Fernandez,* 198 Conn. 1, 501 A.2d 1195 (1985), in support of his argument that partisan commentary by the trial court is reviewable under *State* v. *Evans,* supra. In *Fernandez* and *Smith* we recognized that partisan commentary, if fairly established by the record, is reviewable under *Evans* because such conduct deprives defendants of the very essence of their constitutional right to a fair trial by an impartial jury.

The defendant has specifically challenged that portion of the charge in which the court explained its admission of the victim's statements as spontaneous utterances. At one point in this challenged portion the court stated: "I ruled rightly or wrongly that the statement of Mr. Stange—the statement of Mr. Gagnon to be a spontaneous utterance because it was my opinion that the traveling, that the path he took having been shot and injured and his concern for his health and welfare was a spontaneous utterance. That he did not have sufficient opportunity to concoct a story. That doesn't mean you have to accept his statement as true or as reliable. It is for you to decide. I had to make the decision to admit it, and as was pointed out to you it is true that that statement is subject to the same credibility. It is not different than any other testimony that is admissible. You have a right to accept or reject it anyway you feel, and the fact that I have admitted evidence in this court does not necessarily mean that you must accept it. That's your function. The law permits it on

the basis of admissibility, but you do not have to accept it. I just point out to you that it is for you to decide . . . ."

When examining a jury charge to determine whether error exists, we must examine the charge as a whole. *State* v. *McCalpine*, 190 Conn. 822, 830, 463 A.2d 545 (1983). We note that, early in its charge, the trial court made it clear to the jury that it was solely responsible for determining the facts of the case and that its function was to weigh and consider all the evidence.[6] The charge as a whole is replete with similar instructions. In addition, the final arguments of both the defense counsel and the state's attorney specifically referred to the jury's prerogative to accept or reject the spontaneous utterances.[7] Defense counsel further informed

---

[6] The court instructed the jury as follows: "It is my right also to make comments to you as to the weight of evidence or as to the propriety or lack of propriety of your finding certain facts from that evidence, but where I undertake to make such comments, if I do, they are merely suggestive to you, for you to disapprove or approve in the exercise of your sound judgment. My chief concern with the evidence in this case is to refer to it insofar as to make clear to you the application of the rules of law to this particular case. And if I should refer to certain evidence in this case, if that differs from what you think the evidence is or what you believe the evidence to be, you are to disregard what I tell you the evidence is because you again are the sole determiners of the facts in this case . . . . Now in simple language, ladies and gentlemen, all that I've said to you is that you decide what the facts are regardless of what I tell you, regardless of what counsel have said to you. It's your decision and your right to decide what the facts are, and if what we say to you you disagree with what you believe the facts to have been proven to you, you take what you find and disregard what we say."

[7] The defense counsel's final argument included the following: "Now, Mr. Thomas has referred to the question of Mr. Gagnon's statement as he lay on the Johnson [lawn]. And you'll be instructed that you need not believe that. You're not obligated to believe any one else's testimony in this case from Thomas Stange's to the police officers to Roger Gagnon. And in that respect Mr. Gagnon's statement comes before you [in] much the same respect as any other witness."

In reference to the victim's spontaneous utterances, the state's attorney stated in his final argument: "That doesn't mean you have to accept it completely. It's still up to you to pass on that—on that statement."

the jury that with regard to the victim's statements that had been admitted as spontaneous utterances, "[Y]ou'll be instructed that you need not believe that."

We are not persuaded that the trial court's statements, when viewed in the context both of the facts of the case and the charge as a whole, support the defendant's claim that he has been deprived of a fundamental constitutional right and a fair trial. The charge as a whole, rather than a partisan commentary on the part of the trial court, is a thorough explanation by the court of its ruling to admit the victim's statements as spontaneous utterances. The *Evans* rule, which is designed to protect fundamental rights, deals with substance, not labels. Appellate review cannot be guaranteed by simply characterizing a claim as constitutional. *State* v. *Hull,* supra, 484; *State* v. *Gooch,* 186 Conn. 17, 18, 438 A.2d 867 (1982). We therefore decline to review the defendant's second claim of error under the second exceptional circumstance of *State* v. *Evans,* supra.

## III

The defendant's third claim of error arises out of an evidentiary ruling by the trial court to exclude as hearsay the testimony of police detective Robert Connor as to statements made by the victim to his friend, Hiram Montalvo, who was unavailable to testify. Near the end of the trial, defense counsel requested a hearing outside the presence of the jury to determine the admissibility of Connor's testimony. In his offer of proof, the defendant called Connor, who testified that he and detective John Caukins interviewed Montalvo several hours after the shooting. During that interview, which Connor characterized as a narrative by Montalvo rather than a question and answer session, Caukins took notes that were reduced two days later to a report that attempted to paraphrase Montalvo's statements.

Reading from the report, Connor testified that Montalvo related to the officers, in the form of a paraphrase, his conversation with the victim two days before the shooting. In that conversation, the victim told Montalvo that he was depressed over the defendant's failure to repay money owed to him and that he intended to scare the defendant into making payment. Connor also read from the report that Montalvo stated that the victim owned a .22 caliber rifle.

The court refused to admit, on hearsay grounds, Connor's testimony, to which ruling the defendant took an exception. While the defendant conceded at oral argument that there was no error in the trial court's evidentiary ruling on this issue, he argued in his brief that the ruling was a mechanistic application of the evidentiary rules against hearsay that implicated his constitutional rights. The defendant contends that the trial court, having admitted the victim's statements to Senetcen, denied the defendant his right to a fair opportunity to defend against the state's accusations under the sixth and fourteenth amendments to the United States Constitution when it subsequently excluded statements made by the victim to Montalvo as proffered by Connor. The defendant further argues that Montalvo's statements were critical to the defense because they tended to contradict the statements made by the victim's spontaneous utterances that were otherwise incapable of being rebutted through the "classic tools of confronting one's accuser and compulsory process." We disagree with the defendant's constitutional characterization of this issue and find no error in the trial court's ruling.

"Under our state and federal constitutions, ' "[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in

one's own behalf have long been recognized as essential to due process." ' *State* v. *Mastropetre,* 175 Conn. 512, 520, 400 A.2d 276 (1978), quoting *Chambers* v. *Mississippi,* 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *State* v. *Fernandez,* [supra, 15]." *State* v. *Torres,* 210 Conn. 631, 644, 556 A.2d 1013 (1989).

We have also previously recognized that not every evidentiary ruling adverse to a defendant results in constitutional error and that "[i]n the exercise of his sixth amendment right to compulsory process 'the accused, as required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' " *State* v. *Douglas,* 203 Conn. 445, 455, 525 A.2d 101 (1987), quoting *Chambers* v. *Mississippi,* supra, 302.

Exceptions to the hearsay rule have been recognized where necessity exists and where "circumstances exist which can be deemed to render the statement in question ' "equivalent in reliability and trustworthiness to the standard of ordinary testimony when subjected to cross-examination." ' *Shea* v. *Hyde,* [107 Conn. 287, 289, 140 A. 486 (1928)]." *State* v. *DeFreitas,* 179 Conn. 431, 440, 426 A.2d 799 (1980). "The question of trustworthiness is a crucial threshold issue of law going to admissibility, and it must be resolved first by the trial judge before it becomes a question of weight for the jury." *United States* v. *Robinson,* 544 F.2d 110, 115 (2d Cir. 1976).

The defendant acknowledges that his right to defend himself against the state's accusations does not entitle him to disregard reasonable rules governing the admissibility of evidence. We are not convinced, however, as the defendant seems to be, that the excluded evidence was so critical to the defendant and so trustworthy and reliable that the trial court should have

made a special exception to permit the statements to be admitted as was found necessary in *Chambers* v. *Mississippi,* supra.

In deciding whether to admit the victim's statements to Montalvo as related to Connor, the trial court faced a double hearsay problem with its concomitant questions of the reliability and trustworthiness of both the victim and Montalvo. While the defendant contends that the necessary reliability is met by the friendship between the victim and Montalvo and the lack of any reason for either declarant to fabricate his statements, the record indicates that the trial court found the evidence unreliable in light of the fact that Montalvo had previously been sued by the victim.

As to the critical need of the excluded evidence to contradict the victim's spontaneous utterances, we note that the defendant himself testified to his being frightened by the victim and his shooting of the victim out of fear for his own life. Police officers and family members of the defendant testified to his claim of self-defense in addition to testimony offered by the defendant and one of the victim's neighbors as to threatening behavior previously exhibited by the victim.

Furthermore, we find unavailing the defendant's argument that our decision in *State* v. *Torres,* supra, supports his claim that the trial court violated the defendant's constitutional right to defend against the state's accusations. In *Torres,* the trial court admitted a declarant's consistent statements made prior to a probable cause hearing and offered by the state to corroborate the declarant's probable cause testimony. The trial court, however, refused to allow the defendant to impeach the same declarant with his inconsistent statements made prior to the probable cause hearing. We held that this uneven application of the rules of evidence

by the trial court denied the defendant his right to a fair opportunity to defend against the state's accusations. We do not agree with the defendant's conclusion that because the statements to Senetcen and the statements to Montalvo were made by the same declarant, the victim, and referred to issues related to the shooting, the evidence was the same and required equal treatment under *Torres*.

In this case, the trial court was required to exercise its discretion in determining the admissibility of two independent offers of hearsay evidence. We have previously stated that the trial court did not abuse its discretion in determining that the circumstances surrounding the making of the victim's statements to Senetcen rendered them reliable for admission as spontaneous utterances. Furthermore, we are not persuaded that the trial court acted unreasonably in denying the admission of the victim's statements to Montalvo in the absence of circumstances indicating the reliability of those statements.

In light of the foregoing discussion, we conclude that the trial court's exclusion of Connor's testimony did not deprive the defendant of a fair opportunity to defend against the state's accusations.

There is no error.

In this opinion the justices concurred.