STATE OF CONNECTICUT *v.* GWENDOLYN MCNAIR
(AC 17459)

Lavery, Spear and Sullivan, Js.

Argued March 29—officially released September 14, 1999

*Katharine S. Goodbody*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Anne Mahoney*, assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, J. The defendant, Gwendolyn McNair, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1). The defendant claims that the trial court improperly (1) admitted statements made by a witness as evidence under the spontaneous utterance exception to the hearsay rule, (2) admitted evidence of the victim's pregnancy at the time of the incident and (3) charged the jury on self-defense. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of September 19, 1995, the victim, Crystal Hill, rode her bicycle to a housing project at

31 Annawan Street in Hartford to visit friends. The defendant lived in the housing project and was on the grounds. The defendant and an acquaintance, Clarence Jones, waited on an outside porch for a delivery man to bring food. Jones began arguing with his brother-in-law, a man named Donovan. Jones and Donovan continued to argue and walked around to the back of a building. The defendant saw the victim follow them and also went to the rear of the building. The defendant and the victim exchanged words, and tempers erupted. The victim disarmed the defendant of a bottle and shortly thereafter punched or slapped the defendant in the head. The defendant responded by stabbing the victim. The victim testified, "Every time I was hitting her she was stabbing me." The defendant's teenage son also joined the fight.

Officer Salvatore Abbatiello of the Hartford police department arrived at 11:40 p.m., moments after the stabbing, and tended to the victim's wounds. Officer Nevile Brooks arrived shortly after midnight and was directed by Abbatiello to a potential witness in a nearby apartment. Brooks went directly to the apartment. The woman residing there was nervous and reluctant to talk to the officer, but, once Brooks asked if she saw what happened outside, the woman stated what she knew in detail without further prompting.[1] The defendant was arrested that evening.

Meanwhile, the victim was taken to Hartford Hospital and treated for her injuries. Rocco Orlando, the attending trauma surgeon, testified at trial regarding

[1] Over objection by the defendant, the statement of the witness was relayed by Brooks through his testimony at trial:

"The Court: What did [the witness] tell you?

"Brooks: That she witnessed the accused in a verbal argument with the victim . . . after which the accused's son—or after which she began stabbing the victim and then the accused's son joined in [and] the two of them [the defendant and her son] fled back to their apartment together."

the victim's injuries. The victim received multiple stab wounds and suffered significant blood loss. Orlando further testified that medical personnel paid particular attention to the victim's abdominal wounds because she was pregnant. The victim remained in Hartford Hospital for six days.

I

The defendant first claims that the admission of a witness' statements reported by Brooks violated the rule against hearsay and did not fall within the bounds of the spontaneous utterance exception. We agree with the defendant that the trial court improperly admitted the statement. We conclude, however, that this error was not harmful.

"An out-of-court statement offered to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception to the general rule applies." *State* v. *Hines*, 243 Conn. 796, 803, 709 A.2d 522 (1998). "In *Perry* v. *Haritos*, 100 Conn. 476, 124 A. 44 (1924), our Supreme Court recognized the spontaneous utterance exception to the hearsay rule. This exception allows otherwise inadmissible statements into evidence to prove the truth of the matter asserted if it is proven that (1) the declaration follows some startling occurrence, (2) the declaration refers to the occurrence, (3) the declarant observed the occurrence, and (4) the declaration is made under circumstances that negate the opportunity for deliberation and fabrication by the declarant. *State* v. *Stange*, 212 Conn. 612, 616–17, 563 A.2d 681 (1989); *Perry* v. *Haritos*, supra, 484." *State* v. *Cayouette*, 25 Conn. App. 384, 387, 594 A.2d 1020 (1991). The excited utterance exception "rests on the view that such assertions, made in reaction to a startling event, are trustworthy and void of self-interest. *Mei* v. *Alterman Transport Lines, Inc.*, [159 Conn. 307, 315,

268 A.2d 639 (1970)]." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.11.1, p. 373.

"As a preliminary matter, the trial judge must determine whether an utterance qualifies under this exception to the hearsay rule, and that decision will not be disturbed on appeal unless it constitutes an unreasonable exercise of discretion. *State* v. *Stange*, supra, [212 Conn. 616–17]; *State* v. *Chesney*, 166 Conn. 630, 638, 353 A.2d 783, cert. denied, 419 U.S. 1004, 95 S. Ct. 324, 42 L. Ed. 2d 280 (1974); *Perry* v. *Haritos*, supra, [100 Conn. 484]." *State* v. *Cayouette*, supra, 25 Conn. App. 387.

"The requirement that a spontaneous utterance be made under such circumstances as to negative the opportunity for deliberation and fabrication by the declarant . . . does not preclude the admission of statements made *after* a startling occurrence as long as the statement is made under the stress of that occurrence." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Rodriguez*, 39 Conn. App. 579, 603, 665 A.2d 1357 (1995), rev'd on other grounds, 239 Conn. 235, 684 A.2d 1165 (1996). "While the short time between the incident and the statement is important, it is not dispositive. . . . All material facts should be weighed by the trial judge when determining whether a statement qualifies as a spontaneous utterance." (Citations omitted.) *State* v. *Cayouette*, supra, 25 Conn. App. 388. " 'The ultimate question is whether the utterance was spontaneous and unreflective and made under such circumstances as to indicate absence of opportunity for contrivance and misrepresentation.' " *State* v. *Stange*, supra, 212 Conn. 617.

The crux of the state's argument is that the statements of the witness held the requisite spontaneity and timeliness to be admissible under the doctrine enunciated in *Perry* v. *Haritos*, supra, 100 Conn. 484. In support of

its argument, the state asserts that the witness was visibly nervous, reluctant to speak to the police and feared retribution from the defendant. Also, once the witness did talk with the officer, she provided most of what she knew with minimal prompting. The state maintains that, in light of these factors, the statements were made at a time and under circumstances in which the witness was incapable of cognitive, deliberate and reflective responses as required under *Perry* v. *Haritos*, supra, 484–85.

On appeal, the defendant does not dispute that the declarant's statements followed a startling occurrence, were made with reference to the occurrence or that the declarant observed the occurrence. Nevertheless, the defendant argues that the statements were not made under circumstances that negate the opportunity for deliberation and fabrication for the witness.

Although not dispositive, the length of time between the startling event and the statement is a key factor. *State* v. *Cayouette*, supra, 25 Conn. App. 388. Traditionally, our Supreme Court has allowed a very narrow time frame within which a spontaneous utterance could arise. *Rockville* v. *White Line Bus Co.*, 109 Conn. 706, 710, 145 A. 504 (1929) (three minutes too long); *Perry* v. *Haritos*, supra, 100 Conn. 483 (utterance permitted where made in such close proximity to accident as to be almost part of and contemporaneous with it). The presence or absence of a very brief time frame between the event and the spontaneous utterance was "decisive." *Perry* v. *Haritos*, supra, 483. Recent decisions, however, have under certain circumstances expanded the acceptable time frame between an event and the spontaneous utterance to a significant period. *State* v. *Stange*, supra, 212 Conn. 614–15, 618 n.5 (fifteen to thirty minutes); *State* v. *Guess*, 44 Conn. App. 790, 804, 692 A.2d 849 (1997), aff'd, 244 Conn. 761, 715 A.2d 643 (1998) (one hour); *State* v. *Cayouette*, supra, 386–88

(between ten and twenty-nine minutes). In this case, the declarant did not speak to the officer until approximately thirty minutes after the stabbing.

At this point, however, the similarities between *Stange, Guess, Cayouette* and this case end. In all three of those decisions in which a significant time lapse was allowed, the declarant had undergone drastic personal trauma and remained in a severe emotional state from the time of the event until the time of the statement. In *State* v. *Stange*, supra, 212 Conn. 614, the declarant was the victim of multiple shotgun pellet wounds, was beginning to go into shock, and was found by police "covered in blood, rocking back and forth in a fetal position, rubbing his abdomen and screaming that he had been shot." In *State* v. *Guess*, supra, 44 Conn. App. 793, the declarant had narrowly missed being harmed by fifteen to twenty gunshots and had witnessed his friend sustain critical wounds from the shooting. The police found the declarant "frantic and shaking." Id. In *State* v. *Cayouette*, supra, 25 Conn. App. 386, the declarant had been bound, punched and raped by the defendant and had been found by police lying on the floor in "a kind of catatonic state."

In this case, the agitation suffered by the witness, particularly in light of the significant lapse in time between the event and the statement, simply does not rise to the level of trauma necessary to "negate the opportunity for deliberation and fabrication . . . ." Id., 387. The witness was not the actual or intended victim, or even a close bystander. The witness viewed the incident from the safety of her apartment. The thirty minute intervening period gave the witness "ample time to collect her thoughts" before making the statements at issue. *State* v. *Bowman*, 46 Conn. App. 131, 141, 698 A.2d 908 (1997). Accordingly, the trial court improperly allowed Brooks to testify as to the statements of the witness on the basis of a spontaneous utterance.

We must next determine whether the admission of the declarant's hearsay statements constituted harmful error entitling the defendant to a new trial. Because this admission of the spontaneous utterance constituted an improper evidentiary ruling and did not rise to the level of a constitutional error, the defendant bears the burden of showing that admission of the testimony was harmful. *State* v. *Williams*, 30 Conn. App. 654, 656, 621 A.2d 1365 (1993). "One line of cases states that the defendant must establish that it is more probable than not that the erroneous action of the court affected the result. . . . A second line of cases indicates that the defendant must show that the prejudice resulting from the impropriety was so substantial as to undermine confidence in the fairness of the verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *Marshall*, 246 Conn. 799, 812, 717 A.2d 1224 (1998).

Under either analysis, it does not appear that the exclusion of the witness' brief statements would have caused a different result or that their admission undermined confidence in the verdict. Most significantly, the defendant conceded at oral argument that the witness, to the extent she testified about the altercation, did not contradict the testimony of the defendant. Further, the defendant also conceded at oral argument that the statements by the witness did not provide any additional information that was not already in evidence through other means. The witness' statements, brief as they were, did not significantly vary from the statements of other witnesses to the event. See *State* v. *Walsh*, 52 Conn. App. 708, 720, 728 A.2d 15, cert. denied, 249 Conn. 911, 733 A.2d 233 (1999) ("judgment need not be reversed merely because inadmissible evidence has been admitted, if permissible evidence to the same effect has also been placed before the jury" [internal quotation marks omitted]). Accordingly, the admission of the hearsay evidence was harmless because it was

both merely cumulative and consistent with other testimony. *State* v. *Randolph,* 190 Conn. 576, 589–90, 462 A.2d 1011 (1983).

## II

The defendant next claims that the trial court improperly admitted evidence of the victim's pregnancy at the time of the incident. Specifically, the defendant claims that the admission of this evidence was not relevant and unduly prejudiced the jury. We disagree.

Evidentiary matters decided by the trial court will be overturned only on a showing of a clear abuse of discretion. *State* v. *Avis,* 209 Conn. 290, 298, 551 A.2d 26 (1988), cert. denied, 489 U.S. 1097, 109 S. Ct. 1570, 103 L. Ed. 2d 937 (1989). "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence *tend* to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Emphasis in original; internal quotation marks omitted.) *State* v. *Coleman,* 241 Conn. 784, 788–89, 699 A.2d 91 (1997).

Applying these principles to the facts of this case, we conclude that the trial court did not abuse its discretion when it admitted the evidence relating to the victim's pregnancy. The trial court allowed the state to present evidence to establish a continuum of treatment of the victim by medical professionals. The state may properly present evidence to show the sequence of events as they unfold. *State* v. *Casey,* 201 Conn. 174, 184, 513 A.2d 1183 (1986). The testimony was not unduly graphic in nature and was entered into evidence merely to allow the jury to understand a chronological sequence of significant factual events—the course of medical treatment given to the victim. *State* v. *Gant,* 231 Conn. 43, 59, 646 A.2d 835 (1994), cert. denied, 514 U.S. 1038, 115 S. Ct. 1404, 131 L. Ed. 2d 291 (1995); compare *State* v.

*Castonguay*, 218 Conn. 486, 503–505, 590 A.2d 901 (1991) (graphic testimony involving multiple gunshot wounds found irrelevant to show that gunshots were intended to cause death and were proximate cause of death).

In addition, admission of evidence of the victim's pregnancy did not prejudice the defendant. "We have recognized that even where evidence is relevant there are four situations where prejudice to the defendant could outweigh the probative value of evidence. These are: (1) where the facts offered may unduly arouse the jury's emotions, hostility or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." (Internal quotation marks omitted.) *State* v. *Coleman*, supra, 241 Conn. 790–91.

The defendant contends that the evidence of the victim's pregnancy unduly aroused the sympathy of the jurors toward the victim and created a side issue that distracted the jury. Even if we assume that a possibility of prejudice existed, events throughout the trial cured any potential problems of prejudice or distraction. The state and the defendant stipulated that the defendant did not know the victim was pregnant at the time of the stabbing and that the child was born healthy. The testimony showed that no harm occurred to the fetus. No mention was made of the pregnancy during the final arguments of the state and defense. On several occasions, the trial court instructed the jury that it should not allow sympathy to influence its decision. See *State* v. *Gray*, 221 Conn. 713, 730, 607 A.2d 391, cert. denied, 506 U.S. 872, 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992) (jury presumed to follow judge's instructions

in absence of evidence to contrary). In addition, testimony establishing that the victim used illegal drugs while pregnant may reasonably be viewed to lower the jurors' sympathies toward the victim as one who disregards the needs of her unborn child. The cumulative effect of the previously mentioned evidence eradicates any possibility of prejudice or distraction by the jury.

### III

The defendant's final claim is that the trial court improperly instructed the jury regarding self-defense.[2] We disagree.

"An improper instruction on a defense, like an improper instruction on an element of an offense, is of constitutional dimension. . . . In either instance, [t]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled. *State* v. *Anderson,* [227 Conn. 518, 526–27, 631 A.2d 1149 (1993)]. . . . *State* v. *Ash,* [231 Conn. 484, 493, 651 A.2d 247 (1994)]. In determining whether it was indeed reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. *State* v. *Estep,* 186 Conn. 648, 651–52, 443 A.2d 483 (1982); *State* v. *Harris,* 172 Conn. 223, 226, 374 A.2d 203 (1977); *Farlow* v. *Connecticut Co.,* 147 Conn. 644, 648, 166 A.2d 202 (1960); *Amato* v. *Desenti,* 117

---

[2] The instruction at issue states: "In this case, if you find beyond a reasonable doubt that the victim was not using, or about [to] use deadly physical force, or inflict great bodily harm upon the defendant, or another, if you further find proven beyond a reasonable doubt that the defendant had no reasonable belief that the victim was using or about to use deadly physical force or about to inflict great bodily harm upon the defendant or another, then the defendant would not be justified in using deadly physical force upon the victim."

Conn. 612, 617, 169 A. 611 (1933). The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. *State* v. *Reed*, 174 Conn. 287, 305, 386 A.2d 243 (1978); *State* v. *Holmquist*, 173 Conn. 140, 151, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977). The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. *State* v. *Roy*, 173 Conn. 35, 40, 376 A.2d 391 (1977); *State* v. *Mullings*, 166 Conn. 268, 274–75, 348 A.2d 645 (1974). . . . *State* v. *Ash*, supra, 493–94, quoting *State* v. *Dyson*, 217 Conn. 498, 501–502, 586 A.2d 610 (1991)." (Internal quotation marks omitted.) *State* v. *Prioleau*, 235 Conn. 274, 284–85, 664 A.2d 743 (1995).

The defendant contends that the instruction could be expected to mislead the jury into applying an objective test, rather than a test that contains subjective elements from the perspective of the defendant in determining whether the defendant was justified in using deadly physical force against the victim. See *State* v. *Scarpiello*, 40 Conn. App. 189, 206–207, 670 A.2d 856, cert. denied, 236 Conn. 921, 674 A.2d 1327 (1996). When we view the jury charge as a whole, it is apparent that the jury was instructed to consider the perspective of the defendant in evaluating whether she acted in justifiable self-defense. Elsewhere, the trial court defined the law of self-defense as containing a subjective element. The trial court, in describing self-defense, commented that "[d]eadly physical force may not be used unless the actor, meaning the defendant, reasonably believes that such other person, meaning the victim in this case, is using or [is] about [to] use deadly physical force." The court further noted that "[t]he [self-defense] statute [focuses] on the person claiming self-defense. It focuses on what she reasonably believed under the circumstances. . . . In other words, what is important is what

the defendant reasonably believed under the circumstances in this case." The court also defined the self-defense test as requiring the jury "to measure the justifiability of the defendant's actions from a subjective perspective, that is, what the defendant reasonably believed under the circumstances presented in this case, and on the basis of what the defendant perceived the circumstances to be."[3] These instructions were given just prior to the charge the defendant claims constitutes reversible error. When we view the jury charge as a whole, it is clear that the trial court adequately disclosed to the jurors the dimensions of the subjective-objective test inherent in the self-defense instruction. The trial court's instructions to the jury were proper.[4]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] The trial court also articulated the objective element of the self-defense instruction: "Now, the test for the degree of force in self-defense is a subjective-objective test, meaning it has some subjective aspects and some objective aspects. Self-defense thus requires you as the jury to measure the justifiability of the defendant's actions from a subjective perspective. . . . However, the defendant's belief must have been reasonable, and not irrational or unreasonable under the circumstances. That is, would a reasonable person in the defendant's circumstances have reached that belief. That is the objective [aspect] of the test. It is both a question of what her belief was and whether it was reasonable."

[4] The defendant contends that the trial court improperly refused to provide an "imperfect self-defense" instruction to the jury. The defense of imperfect self-defense is not recognized in Connecticut. *State* v. *Abdalaziz*, 248 Conn. 430, 434, 729 A.2d 725 (1999).