# STATE OF CONNECTICUT *v.* SHAWN DAVIS
## (AC 27862)

Flynn, C. J., and Robinson and McDonald, Js.

Argued February 5—officially released July 22, 2008

*Glenn W. Falk,* special public defender, for the appellant (defendant).

*Adam Marks,* certified legal intern, with whom were *Michele C. Lukban,* senior assistant state's attorney, and, on the brief, *Michael Dearington,* state's attorney, and *John M. Waddock,* supervisory assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Shawn Davis, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree with intent to cause serious physical injury to another person by means of a deadly weapon in violation of General Statutes § 53a-59 (a) (1), assault in the first degree with intent to cause physical injury to another person by the means of the discharge of a firearm in violation of General Statutes § 53a-59 (a) (5), assault in the first degree under circumstances evincing an extreme indifference to human life in violation of General Statutes § 53a-59 (a) (3) and carrying a pistol without a permit in violation of General Statutes § 29-35. On appeal, the defendant claims that the court improperly (1) admitted into evidence statements made by the victim under the spontaneous utterance exception to the hearsay rule and (2) violated his sixth amendment right to cross-examine and to confront the victim. We affirm the judgment of the trial court.

The following evidence was presented at the defendant's trial. On May 8, 2004, Deloris Watson, a cousin of the victim, Troy Davis, was living in an apartment located at 456 Valley Street in New Haven. The victim, who had agreed to drive Watson to work that day,

arrived at Watson's premises early that morning after drinking six beers the night before. The victim walked to the door of Watson's apartment and, as he was retrieving his key to the apartment door, he heard a voice, turned around and observed the defendant approaching him. The victim had never seen the defendant before. As the victim continued to search for his key, the defendant walked onto the porch in front of Watson's door and stood one to two feet away from the victim.

The two men had "words" on the porch, and the defendant reached into his pocket, pulled out a handgun and began shooting at the victim. After the first gunshot was fired, the victim, who had been facing the defendant, turned around and began to run. The victim heard a total of two gunshots before he lost consciousness. Watson, who was in her bedroom at the time of this incident, heard five gunshots. After the gunfire ceased, Watson looked out of her second floor bathroom window and observed a black male running along Valley Street. The man got into a small car and drove away.

New Haven police Officer Stephen Torquati was the first person to respond to a 5:45 a.m. police radio broadcast reporting a shooting in the area. Torquati arrived at the scene and observed the victim lying on the sidewalk. Torquati asked the victim if he knew who had shot him, but the victim, who appeared to be in extreme pain, could not respond. As emergency vehicles arrived at the scene, Watson exited her apartment and observed the victim lying on the sidewalk. Watson informed a police officer that the victim was her cousin. Richard Miller, a New Haven police officer, arrived at the scene shortly after 6:03 a.m. Miller observed paramedics placing the victim into an ambulance. Miller returned to his vehicle and followed the ambulance for approximately five minutes to Yale-New Haven Hospital. The victim was taken to a trauma room, where he received medical

treatment for approximately fifteen minutes. At the hospital, physicians observed four life threatening gunshot wounds to the victim's chest and abdomen. A fifth gunshot wound was discovered on the victim's left arm. Of the bullets that remained in the victim's torso, one had entered the victim through his lower abdomen and the other three had entered through his back. These bullet wounds damaged the victim's liver, small bowel and colon, and caused bodily fluids to leak into his abdomen. These injuries, along with the attendant massive internal bleeding, required immediate "damage control surgery" to repair. As the victim was being moved to an operating room, Miller accompanied him in a hospital elevator. In the elevator, Miller asked the victim three times if he knew who had shot him. The victim did not respond to the first two questions, but after Miller asked the question a third time, the victim moved his head up and down. Miller then asked the victim who had shot him, and the victim responded by shaking his head "no."

On May 21, 2004, Detective Clarence Willoughby of the New Haven police department returned to the hospital to speak with the victim. The victim informed Willoughby that he could identify the person who had shot him and provided Willoughby with a description of the shooter. The next day, Willoughby returned to the hospital with a photographic board containing photographs of eight men. The victim identified the defendant as the man who had shot him. After the defendant was arrested, he was read his rights pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and subsequently confessed to shooting the victim on May 8, 2004. During trial, the victim also identified the defendant as the man who had shot him. The defendant was convicted on all charges, and the court sentenced him to fifteen years imprisonment and

five years special parole. This appeal followed. Additional factual and procedural history will be set forth as necessary.

I

The defendant first claims that the court abused its discretion when it admitted the victim's hearsay statements to Miller under the spontaneous utterance exception to the hearsay rule. The defendant argues that a statement made after a thirty minute lapse following a startling event represents the outer limits of a spontaneous utterance under Connecticut case law and, therefore, that the court abused its discretion in admitting the testimony in light of the fact that the shooting had occurred approximately forty minutes before the victim's statements were made.[1] We disagree.

The following additional factual and procedural history is relevant to our review of the defendant's claim. During trial, outside the presence of the jury, the court conducted a hearing to determine the admissibility of the victim's nonverbal statements to Miller. In its offer of proof, the state called Miller, who testified that he attempted to speak to the victim at the hospital approximately forty minutes after the victim was shot. Miller testified that when he arrived at the scene of the shooting, the victim was receiving medical treatment. Miller testified that he followed the victim's ambulance to Yale-New Haven Hospital, where the victim was taken to the trauma room. Miller testified that the victim received medical treatment in the trauma room for ten to fifteen minutes. Miller testified that as the victim was being transferred to the operating room in an elevator,

---

[1] "A 'statement,' as that term is used in the hearsay rule and its exceptions, is defined in § 8-1 (1) of the Connecticut Code of Evidence as '(A) an oral or written assertion or (B) nonverbal conduct of a person, if it is intended by the person as an assertion.' " *State* v. *Carpenter*, 275 Conn. 785, 859, 882 A.2d 604 (2005), cert. denied, 547 U.S. 1025, 126 S. Ct. 1578, 164 L. Ed. 2d 309 (2006).

Miller accompanied him, standing next to the victim's gurney. In the elevator, Miller asked the victim three times if he knew who had shot him. The victim did not respond to the first two questions, but after Miller asked the question a third time, the victim responded by shaking his head yes. Miller then asked the victim who had shot him, and the victim responded by shaking his head "no."[2]

At the conclusion of the state's offer of proof, the defendant argued that the victim's statements to Miller were hearsay and inadmissible under the spontaneous utterance exception to the hearsay rule. The court, however, noting that these statements were made approximately forty minutes after a shooting in which the victim had sustained severe injuries, permitted the state, under the spontaneous utterance exception to the hearsay rule, to present Miller's testimony regarding the victim's statements to him.

---

[2] During the hearing, the prosecutor elicited the following testimony from Miller:

"Q. As Troy Davis was being taken from the trauma room to the operating room, at that point in time did you attempt to speak to him?

"A. Yes, I did.

"Q. And could you tell the court what it is that you did?

"A. While he was on the elevator, going up to the operating room, I asked Mr. Davis if he knew who had shot him. I did that three times. The third time he shook his head yes.

"Q. So, let me understand this correctly. You asked Troy Davis three times if he knew who had shot him?

"A. Yes.

"Q. And on the third question you asked of him he shook his head yes?

"A. Yes, that's correct.

\* \* \*

"Q. All right. And when you asked him the question and he responded, did he respond looking at you?

"A. Yes.

"Q. All right. And you indicated he shook his head yes. Did you then ask him who it was in particular that shot him?

"A. Yes, I did.

"Q. And what did he do or say in response to that question?

"A. He looked at me; he rolled his eyes back; and he shook his head no."

A "spontaneous utterance" is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Conn. Code. Evid. § 8-3 (2). "[T]he commentary to § 8-3 (2) provides: The hearsay exception for spontaneous utterances is well established. . . . Although [§] 8-3 (2) states the exception in terms different from that of the case law on which the exception is based . . . the rule assumes incorporation of the case law principles underlying the exception. The event or condition must be sufficiently startling, so as to produce nervous excitement in the declarant and render [the declarant's] utterances spontaneous and unreflective. . . .

"The excited utterance exception is well established. Hearsay statements, otherwise inadmissible, may be admitted into evidence to prove the truth of the matter asserted therein when (1) the declaration follows a startling occurrence, (2) the declaration refers to that occurrence, (3) the declarant observed the occurrence, and (4) the declaration is made under circumstances that negate the opportunity for deliberation and fabrication by the declarant." (Internal quotation marks omitted.) *State* v. *Kirby*, 280 Conn. 361, 373–74, 908 A.2d 506 (2006). "Whether an utterance is spontaneous and made under circumstances that would preclude contrivance and misrepresentation is a preliminary question of fact to be decided by the trial judge. . . . The trial court has broad discretion in making that factual determination, which will not be disturbed on appeal absent an unreasonable exercise of discretion." (Internal quotation marks omitted.) *State* v. *Nelson*, 105 Conn. App. 393, 404, 937 A.2d 1249, cert. denied, 286 Conn. 913, 944 A.2d 983 (2008); see also *State* v. *Kirby*, supra, 374–75.

"The requirement that a spontaneous utterance be made under such circumstances as to [negate] the opportunity for deliberation and fabrication by the

declarant . . . does not preclude the admission of statements made after a startling occurrence as long as the statement is made under the stress of that occurrence. . . . While [a] short time between the incident and the statement is important, it is not dispositive." (Internal quotation marks omitted.) *State* v. *Kirby*, supra, 280 Conn. 374.

"[T]he application of the exception entails a uniquely fact-bound inquiry. The overarching consideration is whether the declarant made the statement before he or she had the opportunity to undertake a reasoned reflection of the event described therein." (Internal quotation marks omitted.) Id., 376. In accordance with the majority of jurisdictions that have addressed this issue, our Supreme Court has determined that "there is no identifiable discrete time interval within which an utterance becomes spontaneous [and that] [e]ach case must be decided on its particular circumstances." (Internal quotation marks omitted.) Id., 375; see also C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 8.17.2, p. 508 (statement admissible as spontaneous utterance when made before time for deliberation and fabrication); 2 C. McCormick, Evidence (6th Ed. 2006) § 272, p. 258 (statement admissible as spontaneous utterance when "declarant did not in fact engage in a reflective thought process"). Indeed, in *State* v. *Stange*, 212 Conn. 612, 618–20, 563 A.2d 681 (1989), our Supreme Court reviewed a number of cases in which the acceptable time lapse between the startling occurrence and the declarant's statement ranged from fifteen minutes to six and one-half hours.

Like the situation in *State* v. *Stange*, supra, 212 Conn. 618, in which the declarant had sustained gunshot wounds prior to making the challenged statement, the declarant in this case, the victim, had undergone serious physical trauma, namely, sustaining numerous life threatening gunshot wounds, and he remained in a

severe state from the time of the startling event until the time of the statements.[3] Although approximately forty minutes had elapsed, it was within the court's discretion to conclude that the victim, who, at the time of the statements' issuance, was being transported to the operating room on a gurney, never had time to collect his thoughts before making the statements at issue. See *State* v. *Kirby*, supra, 280 Conn. 377. Moreover, prior to arriving at the hospital, the victim, who was in extreme pain and could not respond to police officers, did not have the opportunity to reflect or to contrive a story. See id. Accordingly, we conclude that the court did not abuse its discretion in admitting the victim's statements to Miller as a spontaneous utterance.

## II

The defendant next argues that even if the statements were admitted properly as spontaneous utterances, the admission of the victim's statements violated the defendant's right to confront witnesses under the sixth amendment to the United States constitution. The defendant did not preserve this issue for appeal, and he therefore seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

Under *Golding*, a "defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless

---

[3] "Moreover, that a statement is made in response to a question does not preclude its admission as a spontaneous utterance." *State* v. *Kirby*, supra, 280 Conn. 376.

error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any of these conditions, the defendant's claim will fail." (Emphasis in original.) Id. We may "respond to the defendant's claim by focusing on whichever [*Golding*] condition is most relevant in the particular circumstances." Id., 240.

Our Supreme Court has recognized that "[t]he conclusion that evidence is admissible under a hearsay exception does not preclude the possibility, in a criminal trial, that the same evidence will be inadmissible under the confrontation clause of the sixth amendment. The confrontation clause limits the state's use of hearsay evidence against a criminal defendant at trial." (Internal quotation marks omitted.) *State* v. *Kirby*, supra, 280 Conn. 377–78. The United States Supreme Court, however, has concluded that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford* v. *Washington*, 541 U.S. 36, 60 n.9, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

Here, the record reveals that the victim, who was incarcerated at the time of trial, testified as a witness for the state. Although the victim was called to testify before the state introduced his challenged testimonial statements during its later direct examination of Miller, the defendant could have attempted to recall the victim as a witness. See *State* v. *Martin*, 77 Conn. App. 778, 817, 825 A.2d 835 ("whether to allow a recall of a witness for further cross-examination is within the discretion of the trial court"), cert. denied, 266 Conn. 906, 832 A.2d 73 (2003). The defendant did not do so. Because the record does not reflect either that the defendant sought to conduct further cross-examination of the victim after Miller testified or that the court in any way restricted the defendant's rights to cross-examine the victim; see *State* v. *Stepney*, 94 Conn. App. 72, 79 n.2,

891 A.2d 67, cert. denied, 278 Conn. 911, 899 A.2d 40 (2006); we conclude that his claim must fail under the third prong of *Golding.* We also note that during cross-examination, the victim testified that he did not remember anything that occurred after the shooting. It is well established that "a witness' claimed inability to remember earlier statements or the events surrounding those statements does not implicate the requirements of the confrontation clause under *Crawford,* so long as the witness appears at trial, takes an oath to testify truthfully, and answers the questions put to him or her during cross-examination." *State* v. *Pierre,* 277 Conn. 42, 86, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006).

Moreover, as to the fourth prong of *Golding,* our review of the record reveals that the admission of the victim's statements into evidence, even if erroneous, was harmless beyond a reasonable doubt. "The harmless error doctrine is rooted in the fundamental purpose of the criminal justice system, namely, to convict the guilty and acquit the innocent. . . . Therefore, whether an error is harmful depends on its impact on the trier of fact and the result of the case." (Citation omitted.) *State* v. *Daugaard,* 231 Conn. 195, 212, 647 A.2d 342 (1994), cert. denied, 513 U.S. 1099, 115 S. Ct. 770, 130 L. Ed. 2d 666 (1995). "As the United States Supreme Court said in *Chapman* v. *California* [386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)], before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. [Our Supreme Court] has held in a number of cases that when there is independent overwhelming evidence of guilt, a constitutional error would be rendered harmless beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Hoeplinger,* 206 Conn. 278, 294–95, 537 A.2d 1010 (1988). "The proper standard is whether any reasonable

jury *would* have found the defendant guilty if the improperly admitted evidence had been excluded." (Emphasis in original.) Id., 296.

In the present case, there was overwhelming evidence of the defendant's guilt independent of the statements the victim made in the hospital elevator in response to Miller's questions. At trial, the victim identified the defendant as the person who had shot him. The victim also was able to identify the defendant's photograph on a police photograph board. Moreover, the evidence admitted at trial also included a confession by the defendant. Our Supreme Court has "repeatedly noted that a confession, if sufficiently corroborated, is the most damaging evidence of guilt . . . and in the usual case will constitute the overwhelming evidence necessary to render harmless any errors at trial." (Internal quotation marks omitted.) *State* v. *Iban C.*, 275 Conn. 624, 645, 881 A.2d 1005 (2005). The confession was corroborated by the victim's account of the shooting and by Willoughby. On the basis of the foregoing, any error was harmless beyond a reasonable doubt.

The judgment is affirmed.

In this opinion the other judges concurred.